Carr, J.
The counsel for the appellees, in the argument here, abandoned both the grounds on which the interlocutory decree was founded; and very properly; for nothing can be better settled, than that equity will set up a lost bond against sureties, nor any point clearer, than that Swearingen was a competent witness. His *484 debt was paid off, under a decree of twenty years standing'j and which never could be impeached. The counsel, however, questioned whether equity could charge -the heirs of an obligor, upon a lost bond, and said that research had not enabled him to find a single case in which equity had set up a. lost bond against heirs. Believing that I should hardly find, what had escaped the eye of that vigilant counsel, I have not looked for such a case. But taking up the question upon principle, I cannot feel a doubt, that equity has the power, and that it is the duty of her courts to charge the heir upon a lost bond, wherever there is proof that it bound the heirs, and assets have descended. The right of the ancestor to bind the heir, so far as real assets shall descend, is one of the oldest principles of the common law. The proof in this record satisfies my mind, that the lost bonds did bind the heirs. What is the meaning of the phrase that equity will set up a lost bond, Or other instrument ? I understand it to mean, that the instrument will be restored to its pristine vigor and power; that the accident will be relieved against ,• the loss supplied. If so, and if the bond bound the heirs before the loss, it must equally bind them after it is set up,— after it is found again; otherwise, it is not the same bond. In Field v. Harrison, 2 Wash. 140. president Pendleton said, “ It is true a court of equity will set up a lost bond against a surety ; but the reason is, that the surety is not discharged by the loss of the bond, and the court only relieves against the accident, by setting up the evidence of the debt.” Surely, this reasoning applies equally to the heir: he is not discharged by the loss of the bond; and when the evidence of the .debt is set up, it is equally conclusive upon him, as on the surety. Indeed, the equity of the surety seems to me much the strongest; for he is bound, though he never received a cent, while the heir is only bound, when, and so far as ho has received real assets from the original debtor.
*485 The case of Bishop v. Church, 2 Ves. sen. 373. is not ad idem with the present case, but 1 think the principle the same. That was the case of a joint bond, where one obligor died, and the application to equity was, to set up the remedy, confessedly gone at law, against the executor and heir of the deceased obligor: it was objected, in the argument, that when the heir was once clear at law, equity never bound him; but lord Ilardwicke said, “As to the heir at law, I am of opinion, that the plaintiff has the same equity against him. In all the cases, where two, their heirs, executors and administrators, are bound in a joint bond, and by the death of one, in the life of the other, the legal lien and action at law have been gone, if a court of equity has allowed the equity, and set up the bond, it has always set it up, not partly only against the personal estate and executor, but against the heir also; because that is a very different case from that which was put, where the heir was not named.” And he referred to several cases, and among others, to Acton v. Pierce, 2 Vern. 480. where A. gave a bond to B. his intended wife, which being extinguished by the marriage, was, after the death of the husband, set up against his heir.
I am of opinion, that the decree should be reversed, and the cause remanded, with directions to the court below, to enter a decree precisely like tire final decree of the chancellor, except that it shall embrace the whole sum paid by the surety.
The other judges concurring, decree reversed, and cause remanded &c.